# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

| | |
|---|---|
| BRAD BROWN, Individually and For Others Similarly Situated,<br><br>　Plaintiff,<br><br>v.<br><br>EQUITRANS MIDSTREAM CORPORATION, and EQM MIDSTREAM PARTNERS, LP,<br><br>　Defendants. | Case No. _____5:20-cv-00434_____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.　Brad Brown (Brown) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Equitrans Midstream Corporation (Equitrans), and Defendant EQM Midstream Partners, LP (EQM) (collectively, Defendants) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.　Brown worked for Defendants as a Coating Inspector.

3.　Brown and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4.　But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5.　Instead of receiving overtime as required by the FLSA, Defendants classified Brown and the Putative Class Members as independent contractors, and these workers received a flat amount for each day worked (a "day rate") without overtime compensation.

6.　Neither Brown nor the Putative Class Members never received a guaranteed salary.

7.     This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     Venue is proper under 28 U.S.C. § 1391(b)(2) as Brown worked for Defendants in Beckley, Raleigh County, West Virginia.

## PARTIES

10.     Brown worked for Defendants as an inspector from approximately April 2019 until September 2019.

11.     Throughout his employment with Defendants, Brown was paid a day rate with no overtime compensation and was classified as an independent contractor by Defendants.

12.     In fact, Brown's relationship with Defendants was an employer/employee relationship.

13.     Brown's consent to be a party plaintiff is attached as Exhibit 1.

14.     Brown brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Defendants' day rate system.

15.     Each of these workers received a flat amount for each day worked and did not receive overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

16.     The collective of similarly situated inspectors—or putative class members sought to be certified is defined as follows:

> **All inspectors working on Equitrans and/or EQM projects who were paid a day rate with no overtime at any time during the past 3 years (Putative Class Members).**

17.     The Putative Class Members are easily ascertainable from Defendants' business and personnel records.

18.     Defendant Equitrans is a foreign corporation that maintains its principal office in Canonsburg, Pennsylvania. It is registered to do business in West Virginia and may be served with process by serving its registered agent: **CT Corporation System, 1627 Quarrier Street, Charleston, WV 25311-2124**.

19.     Defendant EQM is a foreign corporation that maintains its principal office in Canonsburg, Pennsylvania. It is registered to do business in West Virginia and may be served with process by serving its registered agent: **CT Corporation System, 1627 Quarrier Street, Charleston, WV 25311-2124**.

20.     Together, Defendants jointly employ Brown and the Putative Class Members.

## COVERAGE UNDER THE FLSA

21.     At all relevant times, Defendants have been employers within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Defendants have been enterprises within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Defendants have been enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Defendants have and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

24.     In each of the last 3 years, Defendants have had annual gross volume of sales made or business done of at least $1,000,000.

25.     At all relevant times, Brown and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26.     Defendants treated Brown and the Putative Class Members as employees and uniformly dictated the pay practices applied to Brown and the Putative Class Members.

3

27.     Defendants' misclassification of Brown and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

28.     Defendants' uniform day rate scheme, depriving their employees of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

29.     According to Equitrans' most recent annual report, Equitrans "through its control of EQM, provides midstream services to its customers in Pennsylvania, West Virginia and Ohio through its three primary assets: the gathering system, which delivers natural gas from wells and other receipt points to transmission pipelines; the transmission and storage system, which delivers natural gas to local demand users and long-haul interstate pipelines for access to demand markets; and the water service system, which consists of water pipelines, impoundment facilities, pumping stations, take point facilities and measurement facilities that support well completion activities and collect flowback and produced water for recycling or disposal. [Equitrans] has no operations independent of EQM."[1]

30.     For its part, EQM "is a growth-oriented limited partnership formed to own, operate, acquire, and develop midstream assets in the Appalachian Basin."[2] Currently, EQM owns transmission, gathering, and storage systems, including a 190-mile gathering header pipeline system in Ohio and West Virginia.[3]

31.     Together, Defendants jointly employed Brown and the Putative Class Members.

---

[1]  Equitrans Form 10-K filed Feb. 27, 2020,  at p. 14 available at
http://d18rn0p25nwr6d.cloudfront.net/CIK-0001747009/8e7f4110-2c0d-4ba4-bb7f-79710b3f4be3.pdf
(last visited June 5, 2020).
[2] https://www.equitransmidstream.com/ (last visited June 5, 2020).
[3] http://eqmmidstream.wpengine.com/gathering-system/ and
http://eqmmidstream.wpengine.com/transmission-and-storage/ (last visited June 5, 2020).

32.     To complete their business objectives, Defendants hired personnel, such as Brown, to perform inspection services.

33.     Defendants considered Brown and the Putative Class Members to be contractors.

34.     But Defendants did not hire these workers on a project-by-project basis.

35.     Rather, Defendants hired and treated these workers just like regular, even if occasionally short term, employees.

36.     Many of these individuals worked for Defendants on a day rate basis (without overtime pay).

37.     These workers make up the proposed Putative Class.

38.     While exact job titles and job duties may differ, these employees were subjected to the same or similar illegal pay practices for similar work.

39.     For example, Brown worked for Defendants from approximately April 2019 until September 2019 in and around Beckley, West Virginia.  During this time, he held the title of Coating Inspector.

40.     As a Coating Inspector, Brown was tasked with ensuring the Defendants' specification were being followed, to track the ambient conditions to ensure the materials used were within the correct parameters, and making sure the coating was applied to the pipes according to Defendants' specification.

41.     All the Putative Class Members perform similar duties, regardless of title, as they performed inspections on the oil and gas pipelines or facilities to ensure the materials, products and projects are completed according to Defendants' specifications.

42.     Brown did not have any supervisory duties.

43.     Brown did not hire for fire employees.

44.     Brown did not exercise discretion and judgment as to matters of significant.

45.     To the contrary, Brown worked with his hands. He spent at most an hour per week doing office-related work. The rest or his work involved manual labor in the field. Brown worked outside, exposed to the elements.

46.     Brown did not manage a business unit.

47.     Brown was a blue-collar worker.

48.     Throughout his employment, he was classified as an independent contractor and paid on a day rate basis.

49.     Brown and the Putative Class Members worked for Defendants under their day rate pay scheme.

50.     Brown and the Putative Class Members did not receive a salary.

51.     If Brown and the Putative Class Members did not work, they did not get paid.

52.     Brown and the Putative Class Members received a day rate.

53.     Brown and the Putative Class Members did not receive overtime pay.

54.     This is despite the fact that Brown and the Putative Class Members often worked more than 10 hours a day, for as many as 7 days a week, for weeks at a time.

55.     Although Brown typically worked 6 days each week, for 10 to 12 hours a day, he did not receive any overtime pay.

56.     Brown and the Putative Class Members received the day rate regardless of the number of hours they worked.

57.     Brown and the Putative Class Members received a day rate even if they worked more than 40 hours in a workweek.

58.     Without the job performed by Brown and the Putative Class Members, Defendants would not have been able to complete their business objectives.

59.     Brown and the Putative Class Members relied on Defendants for work.

60.     Brown and the Putative Class Members relied on Defendants for compensation.

61.     Brown and the Putative Class Members worked in accordance with the schedule set by Defendants.

62.     Brown and the Putative Class Members could not subcontract out the work they are assigned by Defendants.

63.     Brown and the Putative Class Members were required to follow the policies and procedures imposed by Defendants.

64.     Brown and the Putative Class Members' work had to adhere to the quality standards imposed by Defendants.

65.     Brown and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

66.     Brown and the Putative Class Members did not possess any specialized or unique skill set.

67.     Brown and the Putative Class Members did not market their services while employed by Defendants.

68.     Brown and the Putative Class Members worked exclusively for Defendants during the relevant period.

69.     Brown and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and/or insurance.

70.     Defendants set Brown and the Putative Class Members' work schedule.

71.     Brown and the Putative Class Members' schedules prohibited them from working other jobs for other companies while working on jobs for Defendants.

72.     At all relevant times, Defendants maintained control, oversight, and direction of Brown and the Putative Class Members.

73.     Defendants oversaw Brown and the Putative Class Members' hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

74.     Brown's work schedule was typical of the Putative Class Members.

75.     Defendants controlled Brown and the Putative Class Members' pay.

76.     Likewise, Defendants controlled Brown and the Putative Class Members' work.

77.     Brown and the Putative Class Members' work had to adhere to the quality standards imposed by Defendants.

78.     Brown and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

79.     Defendants knew Brown and the Putative Class Members worked for 10 or more hours a day, usually for 6 days a week, but sometimes as many as 7 days a week.

80.     Defendants' records will reflect the fact that Brown and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

81.     Brown and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks.

82.     Instead, Brown and the Putative Class Members were paid on a day rate basis.

83.     Defendants set these workers' schedules.

84.     Defendants set these workers' compensation.

85.     Defendants required these workers to adhere to strict guidelines, directives, policies and procedures.

86.     The work Brown and the Putative Class Members perform was an essential part of Defendants' core businesses.

87.     Defendants did not require any substantial investment by Brown or the Putative Class Members to perform the work required of them.

88.     Defendants controlled Brown and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates they are paid.

89.     While working for Defendants, Defendants controlled all the significant or meaningful aspects of the job duties Brown and the Putative Class Members perform.

90.     Defendants exercised control over the hours and locations Brown and the Putative Class Members work.

91.     Defendants exercised control over the tools and equipment Brown and the Putative Class Members use.

92.     Defendants exercised control over the rates of pay Brown and the Putative Class Members receive.

93.     Even though Brown and the Putative Class Members worked away from Defendants' offices and without the constant presence of Defendants' supervisors, Defendants still controlled significant aspects of their job activities by enforcing mandatory compliance with certain policies and procedures.

94.     No real investment was required of Brown or the Putative Class Members to perform their jobs.

95.     More often than not, Brown and the Putative Class Members utilized equipment and/or facilities Defendants provided to perform their job duties.

96.     Brown and the Putative Class Members did not provide the significant equipment they work with on a daily basis, such as office space, computers, and communication devices.

97.     Defendants made the large capital investments in buildings, machines, equipment, tools, and supplied the business in which Brown and the Putative Class Members work.

98.     Brown and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and insurance.

99.     Brown and the Putative Class Members were economically dependent on Defendants.

100.     Very little skill, training, or initiative was required of Brown and the Putative Class Members to perform their job duties.

101.     Indeed, the daily and weekly activities of Brown and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Defendants.

102.     Virtually every job function was predetermined by Defendants, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

103.     Defendants prohibited Brown and the Putative Class Members from varying their job duties outside of the predetermined parameters and required Brown and the Putative Class Members to follow selected policies, procedures, and directives.

104.     Brown and the Putative Class Members performed routine job duties largely dictated by Defendants.

105.     All of the Putative Class Members performed similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

106.     All of the Putative Class Members worked similar hours.

107.     All of the Putative Class Members were denied overtime as a result of the same illegal pay practice.

108.     All of the Putative Class Members worked in excess of 40 hours each week.

109.     All of the Putative Class Members often worked 72 hours in a workweek.

110.     Defendants uniformly denied Brown and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

111.     Brown and the Putative Class Members were not employed on a salary basis.

10

112.   Brown and the Putative Class Members never received guaranteed weekly compensation irrespective of the day worked.

113.   The only compensation Brown and the Putative Class Members received was the day rate they are assigned for all hours worked in a single day or week.

114.   Defendants' day rate policy violates the FLSA because it deprives Brown and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek. *See Hewitt v. Helix Energy Sols. Grp., Inc.*, 956 F.3d 341, 342 (5th Cir. 2020); *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269 (5th Cir. 2020); *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 189 (6th Cir. 2017).

115.   Defendants knew Brown and the Putative Class Members worked more than 40 hours in a week.

116.   Defendants knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA's overtime provisions.

117.   Nonetheless, Brown and the Putative Class Members were not paid overtime.

118.   Defendants knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

COLLECTIVE ACTION ALLEGATIONS

119.   Brown brings this claim as a collective action under the FLSA.

120.   The Putative Class Members were victimized by Defendants' pattern, practice, and/or policy which is in willful violation of the FLSA.

121.   Other Putative Class Members worked with Brown and indicated they were paid in the same manner (a day rate with no overtime).

122.   Other Putative Class Members worked with Brown and indicated they performed similar work.

123.    Based on his experiences with Defendants, Brown is aware that Defendants' illegal practices were imposed on the Putative Class Members.

124.    The Putative Class Members are similarly situated in all relevant respects.

125.    The Putative Class Members are blue-collar workers.

126.    Even if their precise job duties varied somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

127.    The illegal day rate policy that Defendants imposed on Brown was likewise imposed on all Putative Class Members.

128.    Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

129.    The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

130.    The overtime owed to Brown and the Putative Class Members will be calculated using the same records.

131.    The overtime owed to Brown and the Putative Class Members will be calculated using the same formula.

132.    Brown's experiences are therefore typical of the experiences of the Putative Class Members.

133.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

134.    Brown has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

135.    Like each Putative Class Member, Brown has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

136.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

137.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries.

138.     Absent a collective action, Defendants will reap the unjust benefits of violating the FLSA.

139.    Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

140.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

141.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

142.    Among the common questions of law and fact are:

   a.  Whether Defendants employed Brown and the Putative Class Members within the meaning of the FLSA;

   b.  Whether Defendants' decision to pay a day rate with no overtime compensation violated the FLSA;

   c.  Whether Defendants' decision to pay a day rate with no overtime compensation to these workers was made in good faith;

   d.  Whether Defendants' violation of the FLSA was willful; and

   e.  Whether Defendants' illegal pay practice applied to all Putative Class Members.

143.    Brown and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform employment policy.

144.    Brown knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

145.    Defendants are liable under the FLSA for failing to pay overtime to Brown and the Putative Class Members.

146.    Consistent with Defendants' illegal day rate policy, Brown and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

147.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Brown and the Putative Class Members.

148.    Defendants' illegal day rate policy deprived Brown and the Putative Class Members of the premium overtime wages they are owed under federal law.

149.    Defendants were aware, or should have been aware, that the FLSA required them to pay Brown and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

150.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

151.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

152.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

### JURY DEMAND

153.    Brown demands a trial by jury.

### PRAYER

WHEREFORE, Brown, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

14

(a)     an order allowing Brown's FLSA claims to proceed as a collective action and directing notice to the other Putative Class Members pursuant to § 216(b) of the FLSA;

(b)     judgment finding Defendants in violation of the FLSA;

(c)     judgment finding Defendants liable to Brown and the Putative Class Members for unpaid overtime, and an equal amount of liquidated damages;

(d)     judgment awarding Brown and the Putative Class Members reasonable attorneys' fees and costs of this action;

(e)     judgment awarding Brown and the Putative Class Members pre- and post-judgment interest at the highest rates allowed by law; and

(f)     such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Anthony J. Majestro
    **Anthony J. Majestro (WVSB 5165)**
    **James S. Nelson (WVSB 10776)**
    **POWELL & MAJESTRO PLLC**
    405 Capitol Street, Suite P-1200
    Charleston, WV 25301
    304-346-2889 – Telephone
    304-346-2895 – Facsimile

    **Michael A. Josephson***
    TX Bar No. 2401478
    **Andrew W. Dunlap***
    TX Bar No. 24078444
    **Taylor A. Jones***
    TX Bar No. 24107823
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com
    *Pro Hac Vice Applications Forthcoming*

    **Richard J. (Rex) Burch***
    TX Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com
    *Pro Hac Vice Application Forthcoming*

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**